LLC. Good morning, your honors. My name is Alvin Becker. I here on behalf of the Apellantes, who is an insurance company. This is an insurance coverage case. It is frankly standard fare at the usual grist for the court's mill. There are not any novel questions before the court. There are no profound questions. The facts are, if not absolutely uncontroverted, they are substantially uncontroverted. So, it would seem to me that there are two principal issues before the court. There are more than two issues, but there are two principal issues. The first issue, if I may do it in that fashion. Sure. Your strongest issue or the issue that's most important to you, I would advise you to discuss. Well, there are two which I think are equal, so I've just made the election here to do late notice first. Late is first. So, with these relatively uncontradicted facts, we know we have a construction accident that We know that the usual cast of characters in this construction project, no disrespect by using the phrase usual cast, but there is an owner, a general contractor, in this case called a construction consultant, and a subcontractor. And as inevitably occurs, a workman for a subcontractor is injured. We all know that under Section 5 of the Workers' Compensation Act, he's prohibited from directly suing his employer, who is also a subcontractor on the project. We do know that on the date of the alleged injurious occurrence, somebody from the general contractor is notified of the occurrence, inspects the site, and photographs it. We also know that, and it's uncontradicted, and it's in writing, that approximately two months later, the general contractor and the owner get a notice from the injured workers, from a workers' compensation insurer, telling them that an accident has occurred. Can I, can I, there's so many facts here. We've read the facts. We've got charts, and we know kind of who and what's what. So, it's not until eight years later? No, that's not fair. I would like it to be eight years, not fair. When is the first time in the timeline that Kenneth James, et al., contacts, makes notice, makes whatever, to American Country? There is no contact by them. However, in the year 2002, approximately 24 months after the injurious occurrence, a lawsuit is filed. Well, there is contact. I mean, they tendered their defense. Not to us. They did not tender the defense to us until the year 2006. That's what I'm saying. Okay. So, they contacted you, they tendered their defense in 2006, and that's the first time that there is one-on-one contact, we'd say, between Kenneth James and American Country. Indeed. There you go. Now, the fact that it took all that time, certainly, during that time, American Country was fully aware, at least after the tender of Allwright to it, that there was this lawsuit. There's not the slightest doubt that in the year 2002, American Country receives a copy of the tort complaint, and they know that their name insured is made a respondent in discovery. And they, somewhere along the way there, they accept the defense of Allwright. They don't raise a notice defense. They go ahead and they represent Allwright. You bet. Got it. Okay. So, the problem is between 2002 and 2006, right? No. I don't agree. Okay. I think, respectfully, I think the problem is what occurred between 2000 and 2002, not 2002 and 2006. And that is, all ought to agree that under the American Country policy provision, which is plain, ordinary, standard, unambiguous, that the additional insurance, or Kenneth James and the owner, Oak Grove, they were to notify us of any claim or injurious occurrence. Can I just finish my last part here? Okay. They didn't for two years. But Allwright, who was the name insured. Yes. Did make that claim in 2002. Yes. And you had no problem with that? Okay. So, if you have a problem with them, why is it that the additional, this is really where I'm trying to get at. Sure. You got notice from the name insured about this lawsuit. Yes. Why then are you suggesting that prior to that, the additional insured had to have given you notice if you have no problem with the name insured not giving you notice? Okay. That's my question. Sure. I'm going to try to answer that as directly as I can. The evidence with regard to the knowledge that there was an injurious occurrence and a claim was being made with regard to the additional insured is summary judgment stuff. Nobody would dispute that they knew, at least in May of 2000, that there was an injurious occurrence and there was a claim. Nobody could make that argument with regard to American countries named insured Allwright. The only evidence that exists in the case with regard to Allwright is at some unknown time, and I mean unknown time, they were told that there was an accident on the premises. It was not their employee. No notice of any kind was given that a claim was being asserted against them. They, therefore, did not give any notice to American country. Lawyers, insurance companies, and courts do not like to see coverage forfeited in an otherwise covered claim based upon some theory or some gossamer concept that you should have known. We had no basis that I could have looked a judge in the eye with regard to Allwright and said, You, Mr. Allwright, breached your prompt notice of occurrence provision in the policy to us. We should have and would have lost that claim. There is no disparate treatment in this case. That is the basis for the distinction between what occurred with regard to the additional insureds and the named insured. They got a written notice that we are making a claim against you within two months of the accident. That never occurred with regard to Allwright. Allwright's first notice that somebody was making a claim against them was when they got served with a summons to be named as a respondent in discovery. That's their first notice. The trial judge believed, which was implicit in your question, Your Honor, that we were treating them differently. Why was it good for one and not for the other? They're not in the same situation. They're entirely different. Somebody had actual notice two months after the accident and 22 months before the lawsuit was filed that there was a written notice, a claim is being made against you for this accident that did not occur with Allwright. And we were entitled to treat them differently. We were entitled to tell them that we don't think you violated your obligation of prompt notice of occurrence.  Can I say this now? Please go ahead. Go ahead. Go ahead. Let me finish. Let me finish this answer. Go ahead, Mr. Bedford. Finish your answer. You wanted to ask me another question. I'll answer this. So you say that as soon as the workman's prompt notice was sent to James, that they should have notified Allwright's insurance company. No. American Country? Mm-hmm. American Country Insurance Company? Isn't that Allwright's insurance company? Allwright is not an insurance company. Allwright is the named insurer. I understand that. Okay. Who is their insurance company? Who is Allwright's insurance company? Mm-hmm. Allwright's insurance company is American Country. That's what I'm saying. Okay. So Kenneth Janis gets a notice. Yes. Okay. They notify their insurance company immediately. Why should they? My problem is Allwright does not come into this lawsuit until sometime later. Yes. It would seem to me that when Allwright comes into the lawsuit, it's at that point that American Country, excuse me, that Kenneth Janis needs to consider its relationship and potential liability in relation to Allwright that might trigger its additional insured coverage. That's my kind of question. I'll try to answer that question hopefully as directly as I did the other one, if I did. And that is, you know, they are not the named insurer. They are an additional insured. The American Country policy in no uncertain terms says that your obligations with regard to occurrence notice and suit notice are identical to that of the named insured. They have actual notice. This wasn't something where they needed to call a lawyer, where they needed to get somebody trained in claims. But notice there's a claim. There's something that took place. But they have no information that their role as additional insured or perhaps vicarious liability through Allwright may come to the fore. Allwright is not a piece of this until sometime later. And once Allwright gets into the case, then there's a potential for liability for Kenneth Janis, and then, it would seem to me, they have to start thinking about Allwright's coverage. Now, recall, Your Honor, that their subcontract agreement required that they be named, Kenneth Janis and Oak Grove, that they be named on our policy with primary coverage. And the evidence is uncontradicted that they had their own insurance department. They knew that they had potential coverage here for this accident for at least three different insurance companies. Their own. But only for vicarious liability, correct? With regard to us? Yeah. That's the second point. That's the other issue? That's the second point, no. All right. My question is, when did they get notice? When did they know that they had potential coverage under the American country policy? As soon as they got written notice, they knew that that injury occurred out of the work that the subcontractor performed on their behalf. Why? Because it's plain as day in the additional insured coverage. If it arises, exclusions aside, if it arises out of your operations, that is, the named insurance operations on your behalf, and that's a but-for analysis, you are presumptive additional insured and you have coverage. They tendered it to their own a little later on. They tendered it to the insurer for the employer who has also provided them with the same kind of coverage American country did. They made all these different tenders, except they didn't give it to us. So we had no notice of this occurrence until the lawsuit was filed. Mr. Becker, now, does the policy between ACIC and All Right specify who must give notice? Yes. What does it say? It says, you and any involved insured. You meaning who? You is the fine term, Your Honor, as the named insured. So that would be All Right? Yes. All Right gave notice? No. All Right gave no notice to us. We received no notice from anybody until 2002. Wait a minute. We're going around in circles. Okay. You meaning your primary insured, so that would be All Right. That's correct. But the coverage for Kenneth James and Oak Grove was as a result of there being subcontractors, and that's pretty standard in that industry. Yes, ma'am. But ACIC wrote this policy. ACIC is an insurance company that could have put any kind of language in that policy they wanted. Isn't that right? Yes, they did. So they could have said any additional insureds who are subject to coverage under this policy must give separate notice for some such language. Couldn't they have said that? I mean, if they had said that, then we would have a much clearer situation, wouldn't we? With all respect, Your Honor, they did. Pardon? They did. They did. Where does it say that in the policy? Show me where it says that. Sure. The policy language is specific. Really, Mr. Becker, I'm not sure. This isn't a trick question because I read every single thing that you gave me, and I do not see that language in there. It says you, and you, the you I understand it to be, and you just confirmed for me, the you means All Right, and All Right did give notice. You know, if All Right didn't give ACIC notice, how is it that ACIC comes to be defending All Right? So All Right must have given notice to ACIC. We don't expect, and the policy is not written to require any insured to give us notice of an occurrence that they don't know about or a claim that they don't know about. Mr. Becker, I just want you to answer my specific question, and my question is, does the policy between ACIC and All Right require who must give the notice? Yes. So the answer to that is yes. And who is the who, in your opinion? Any additional insured is the same. No, no, Mr. Becker, listen carefully. What does the policy language say? What does the policy language say? Who is the who as defined by the policy language? That's what I'd like you to answer. Okay. I'll give you that quote in a little second here. Any additional insured covered by this endorsement shall be subject to all of the limits, terms, conditions, and exclusions as shown in the policy. And the policy says promptly give notice of an occurrence which may result in a claim, a claim which is made, or a suit. So it is very clear that if you – Is this an endorsement? Pardon me? What are you reading from? Which page are you reading? I'm reading from our brief, Your Honor, page 29, which contains the record sites. And the record sites here specifically provides the blanket endorsement for additional – Mr. Becker. Yes. What you're quoting from is – and I understand your – I think I understand your reasoning here. The policy read as a whole says that any additional insured are subject to the same conditions and rights and responsibilities as the primary insured. Yes, ma'am. And in the section where it talks about who shall give notice, the notice – that section refers – the who in that section refers to the primary – to the primary insured. So when read together, the primary insured and the additional insured have the same responsibility. That is correct. Okay. I got – I understand your argument. Okay. Because it says so specifically. Now, the additional insureds had actual written notice that a claim was being asserted against them. The named insured did not. But the policy doesn't say that. The policy doesn't say that the additional insured must give specific written notice. Where does it say that? Okay. The policy provides – same page 29. No, this is from your brief. And it has the record sites. Yeah, I've looked at the record. That's why I'm asking you this. Here are two cents about briefs. Your appendix – we don't care about those cases. You know, we can lug them around. We don't – we can read the cases. In a case like this, we want to see the underlying complaint because that's the eight corners I did. Yes. And we want to see the actual policy language. And that's – so we're going through bankers' boxes, ripping them apart, photocopying stuff because we want to read the original stuff. This is – that's what we're looking for, not so much cases attached to the back of the brief. Okay. Well – We want to see what is the actual policy language. All right. The policy is contained at record 1733, 1741 to 1742. And it says you or any other involved insured must. Right. And so you've got – is that from 1733? And then you've got ellipsis, 1741 to 1742. We want to know – I mean – we'll find it. Okay. That's – To conclude that portion of the argument, there – What is the standard? What is the rule of law we're applying here? And I also find your brief very lacking in law. So tell me, what do we – what is the standard? What are we looking for? What is the duty of the insured? Is it the duty of the insured to give notice when it reasonably believed it had potential coverage under the insurance? No. So let's say somebody slips in the fall. Okay. And I have no idea that I might have liability through someone else, or I have no idea what other coverage might be out there. What is the standard? When the guy slipped, who – what was Kenneth James supposed to figure out? I think that's relatively simple, Your Honor. They had an insurance department. You couldn't start work on the job unless you gave them a certificate of insurance showing that you, Kenneth James, was an additional insured. So that they knew they had – They probably had 10 or 15 subcontractors. Oh, okay. So? So they're supposed to give notice to every single subcontractor? Well – Insurance company? To the extent that at some future time they may decide that they want to implicate that coverage, why is it unfair that they not be required to do that? Is that custom and practice in the industry to do that? Oh, you should – well, all due respect, it most surely is. I disagree, sir, but go ahead. Okay. So 22 months is unreasonable as a matter of law from the day of the occurrence to when they knew a claim was being asserted. And that's when we – however we got the notice. We got the notice from the lawsuit. We didn't get it from them. That doesn't make any difference under the decided cases. How we got the notice. We got the notice 22 months after they actually knew about it. Why didn't we get it sooner? Well, what is the it you're saying they knew about? 22 months after they actually knew about it. What is the it? That a claim was being asserted against them for a liability – Workers' compensation. No, ma'am. The claim was made by a workers' compensation insurer, which would be subrogated to the interest and the rights of recovery of the injured workman. That would be a common law cause of action that the workers' compensation insurer would have for negligence against those persons jointly responsible for causing the injury. Okay. So when the workers' – It was Fremont Insurance Company. When Rithamel filed his workers' compensation claim and his workers' compensation carrier then notified All Rights Insurance Carrier, which would be ACF. No, it did not. They notified Kenneth James. Kenneth James. When they notified Kenneth James that there's a workers' compensation claim, are you saying that from the workers' compensation claim, Kenneth James should have extrapolated that down the road there would be a tort action that was born of that workers' compensation claim? The letter went on to say, You have legal liability for this injury. Please tell us the name of your insurance company and forward it on to them. Mr. Becker, with all due respect, that is truly boilerplate language that goes out in all of those case claims where there is a subrogation-type action from one insurance carrier for an injured worker to another. So are you saying that from that language, that Kenneth James should have been put on notice that there's going to be a tort action down the road and therefore they should have at that point – I just want to know – Yes. Yes. Yes. They should have at that point guessed that there is going to be a tort action so I better notify my insurance carrier. Is that your argument? Yes, ma'am. Okay, now, the worker who was injured, who did he work for? He worked for another subcontractor. Thiel? Yes. And who was Thiel's insurance company? Beacon One Beacon or Beacon One. And Kenneth James gave them notice? They gave Zurich notice first. And then they notified the insurance company of the injured worker? That is correct. Okay. Okay. I mean, that seems to be kind of a responsible thing. Again, you still haven't told me what the standard is that we're supposed to be looking for. It might be responsible, but it doesn't implicate us. That sounds like they could reasonably believe – I'm making up the standard. You haven't given me any law, so I don't know. But they could reasonably believe that there was potential coverage for Thiel's accident or for the Thiel worker's accident under Thiel's policy. So they notified Thiel. Fine. I just don't understand why you think that, therefore, they needed to notify every subcontractor that was on the job or the insurance company of every subcontractor that was on the job. Well, then it becomes respectfully a one-way street. We get the right to implicate coverage whenever we think we want to, but at the same time, we don't want to give you the right to know and investigate this claim. And that just is not how it works. As soon as they knew that Albright was going to be in the case as well, I mean, that's 2002, right? And you said you don't want us to look at 2002 to 2006. You want us to look from 2000 to 2002. As soon as they got notification, as soon as Ken James realized that Albright was being brought into this case, then at that point, that's when you say we don't need to be concerned anymore. At that point, Albright did have notification of this claim. American country had notice of the claim when Albright was brought into the case. Yes. And wouldn't that be the first time that Ken James had any knowledge that they might have potential liability arising through that might trigger the American country policy? No. No, because that's not what the additional insured endorsement. It provides coverage for any work your subcontractors do on your behalf. I was just handing a little note here, and I guess we need to move on. The June 5, 2000 Kenneth James first notice of occurrence states that Albright created the hole. That was a notice that they sent to their own insurance company. So they knew in June of 2005, and that's at record 01680. But you said you didn't care about 2005. Your concern was between 2000. No, I said 2000, ma'am. June 5, 2000. So they knew in June 5, 2000. 2000. If I could go on to the second substantive. I'm sorry I took so long. No, go ahead. I didn't mean to do that. The second question here is the scope of the additional insured coverage. And that is what coverage do we actually provide, and how do you make that determination? It's not that there isn't a whole plethora of case law on this subject matter. There is. Frankly, there are at least three American country cases that deal, two having endorsements substantially the same, and the third, American country versus McHugh, having an identical endorsement, which limits the coverage provided to the additional insured and says specifically that this policy doesn't provide any coverage because there is an exclusion for any extra omissions caused by the additional insured or their employees. Solely? It doesn't say solely. Which ones don't? Our plant policy does not say so. That is correct. Those other cases, was the word solely? Some of them say solely. Is that a big distinction? Ours say any. Ours say any. So ours is even stronger than the other cases. Because it's any. Not solely any. Any act or omission by the additional insured is an exclusion to coverage. Any. And the question is whether or not that is an exclusionary basis so that when the trial judge made a determination that there is a duty to whether or not that violates the so-called four corners rule or whether or not there was any basis for the trial judge to conclude, there was a duty on behalf of American country to defend this claim having nothing to do with late notice. Simply because the underlying tort claim says that the concrete subcontractor cut the hole. We are, and there is no claim in that tort claim that says that we are implicating the rule of imputed or responding at superior or strict liability. So this is what it says. Not withstanding their duties at the above time and place, defendants, Oak Grove Associates, Kenneth James Builders, Kenneth James Construction Corporation, Oak Grove Corporation, Oak Grove, E. Oak Grove Corporation, and each of them, and by and through each other, and their respective agents, servants, and employees, committed one or more of the following careless, negligent acts or omissions. Yes. Okay. Now, isn't the standard, again, I kind of want to talk about the law here. Isn't the standard, when we look at the underlying complaint, don't we have to decide whether or not these allegations fail to state facts regarding potential vicarious liability? Why, reading this, isn't there a, somewhere we can find in this, a potential for vicarious liability? No. Why not from that paragraph? Because that paragraph talks about the acts or omissions of those particular insured, additional insured parties defendant who are corporate or corporate-type entities  It doesn't say, directly or indirectly, that we're trying to charge you with legal responsibility committed by subcontractors. I think your standard is wrong. I'm sorry to keep going back to the law, but the law kind of turns the other way around. It's don't we have to look for this and see, is there anything here that potentially could trigger liability? No, in my opinion. You seem to say that it's got to be, I think you've got your standard backwards. We're supposed to say, is there anything here that, can we say that they fail to state any facts regarding potential vicarious liability? So when they say, there are these corporations who acted and those, and each of them by and through their agents, servants, and employees committed one or more of the following acts. So aren't we saying one of their employees could have committed one of these acts, and therefore they had vicarious liability? No. Why can't I read it that way? With all respect, one of their employees is not a subcontractor. And you really have to appreciate, respectfully, there is a very large distinction. It's one of their employees. The tort plaintiff could have easily said what your Honor has just said to me. They didn't say that, directly or indirectly. With all respect, this case is absolutely indistinguishable from the case of American Country v. McHugh. It is the same endorsement, and it is the same underlying tort complaint. Why, Mr. Becker? Tell me why. Why do you say that? I say it, Your Honor, because number one. Other than you think it is. Why do you say that? I say it because it is the same exact policy additional insured endorsement that was involved in McHugh. Same. Identical. In every respect. Including the solely. What about the solely? There is no solely. Justice Price asked you about the word solely. Does that play a role here? If the endorsement had a provision that said that it must arise solely from the acts of the additional insured, then you would have a question of causation, and I would suspect that that might very well implicate the minimal standard with regard to duty to defend. But it doesn't say that. It just doesn't say that. And that was one of the reasons the endorsement was changed. Now, if you look at the underlying tort complaint in McHugh, and the underlying tort complaint in this case, they're the same. And that's why McHugh was correctly decided, And in all respect, that's why McHugh ought to govern the disposition of this case. There are other points. I'm content respectfully to rely on the brief with regard to the other issues, including the so-called targeted tender question and waiver. Thank you. If you have no other questions, may I sit down? Yes, you may. May it please the Court. Good morning. My name is David Schroeder, and I represent the appellees in this case, Kenneth James Builders and Oak Grove. I guess I will just turn to what we just spent about a half an hour talking about, which was the late notice issue. The point that I would raise is that with respect to the timeframe between 2000 and 2002, which is, by their own admission, the only relevant time period, and the fact that they're conceding that they knew full well about this claim in 2002 is very important for other issues, which I'll turn to if I have time to do so. You have to know that Mr. Rithemill was injured. And you have to know, from our perspective with respect to ACIC, that somehow that related to Allwright Concrete Company. The former was there. Yes, we got a letter from Fremont saying this guy was injured and we're the workers' comp carrier, feels workers' comp carrier, and you may be liable for this. But that letter didn't say anything about how the accident occurred or in any way tying it to Allwright. And as a consequence, because the ACIC policy says that we're only an additional insured with respect to injuries that arise out of Allwright's work, at that time we did not have any reason to put ACIC on notice of that claim. We put Zurich, our own carrier, on notice because they cover us for everything. There aren't the limitations as to when we qualify as an insured or an additional insured under the Zurich policy that there are with ACIC. And so we wouldn't have had any duty at that point to put them on notice. The document that counsel mentioned based on the note that she was handed, that was never pointed out to the trial court. Well, you didn't have a duty, but you could have done it. I mean, if you had a very proactive risk manager at your job site, they could have done that and notified ACIC. I mean, that wouldn't have been so out of the ordinary that it would have been alarming. Well, you know, based on the facts that were known, if they had done that, then that's where this whole conversation between our construction manager and Mr. Rithmo comes in. Our construction manager saw Mr. Rithmo the day of the accident. He didn't appear to be badly injured, and he said, oh, you know, I know everybody is saying I'm going to sue people. I'm not going to sue anybody. And so our guy at the scene. I'll pass that. Okay. When after the workers' comp claim was filed and Zurich and One Beacon were notified. One Beacon, I don't believe, was notified until after the lawsuit was filed. So actually the only thing that happened in 2000, I mean, this is sort of the sequence of events. Mr. Rithmo is injured. He apparently submits a workers' comp claim to his employer, Thiel. Thiel notifies Fremont. Fremont writes us probably a standard letter, which we forward on to Zurich. Nothing else happens. I understand, but my question again is, at that point, had you notified ACIC that this is a claim, we don't know what's going to happen, but, you know, here's this workers' comp claim. Could you have done that? If you had a very active risk manager of your job site, you know, what about if you'd done that? We wouldn't be having this conversation, would we? Because then they couldn't claim that they didn't get notice. Well, first of all, I think that the requirement. I'm not suggesting that that is standard industry practice. Right. I'm just saying that that is not such an outlier in the industry either, that if you did that, they would say, gee, why are you sending me this notice? There's no lawsuit. I mean, it does happen from time to time. Well, yes, and I also think, though, that probably getting workers' comp letters like this is pretty standard, even for very minor injuries, and that, you know, they may get lots of those kinds of notices. I don't know. We have no, you know, evidence on the record for that. But to put the burden on the general contractor to fully investigate those claims at that time, I'm not sure there's any requirement under the law or under industry practice that that should happen. I'm not saying there is. I'm just asking the question. I mean, you're right. I guess if we had fully investigated the workers' comp claim at the time we got the letter from Fremont, I still think that the result of that investigation would have been going back to Mr. Signar, who was at the scene, and probably the person investigating it would have thrown up his hands and said, well, this seems to be a run-of-the-mill workers' comp claim. Let's send it to Zurich and let Zurich and Fremont work it out. Not every workers' comp claim blossoms into a tort lawsuit. Isn't that right? Correct. Exactly. I mean, and in this situation, we would have had no reason to think that had that investigation occurred, given that the person who was injured didn't look injured to our guy. And our guy called Allwright's guy, who also saw him and didn't think that he was that badly hurt. So I don't think that anybody was really on notice that this guy had a serious injury related to this incident until he actually filed suit in 2002. Okay, so let's move on to that. When you actually filed suit, what did you do then with respect to the notice? Well, what we did directly was we gave it to our broker and said put our insurers on notice, and they put Zurich on notice at that time. We admit that we did not affirmatively put ACIC on notice in 2002. But what's important in this case, and as you can tell from ‑‑ Okay, sure. You know, very active brokers and brokers who are really covering the waterfront for their clients, wouldn't they notify every potential insurance carrier once there's a lawsuit filed, especially one like this that has potentially big exposure? So did your broker not do something in a timely way that he should have done? I mean, your broker notified Zurich, and he notified One Beacon. Did he notify One Beacon? No. He just notified Zurich was your primary. Right. So once Zurich was notified and Zurich had a copy of the complaint and it had everybody's name in the captions so everyone knew who the parties were, so then the broker did nothing else for a while. I mean, is that standard industry practice? Isn't a broker required to notify? I know the owner purchases his insurance coverage through a broker, and the broker is the gatekeeper. That broker is responsible for making sure the T's are crossed and the I's are dotted. So isn't it your ‑‑ but the broker's activity is imputed to you, so isn't the broker responsible for making sure ACIC got a notice at that point in time? Well, first of all, and I don't know that we have the facts on this record, we don't know what the broker knew, because in this particular case, the certificates of insurance were being issued by their agent, not our agent. And so we don't know, at least I don't know, whether our broker actually knew about any certificates of insurance that had been issued. Mr. Schroeder, I can tell you that I would be surprised in a project of this magnitude if your broker did not know and have a copy of all of the certificates of insurance that were issued on that project. If he did, if he wasn't doing his job. I ‑‑ again, speaking hypothetically, I would think that that's true, but I do not know ‑‑ I do not have specific facts to that effect in this case to know whether that was the case or not. But what I do think is significant about all of the arguments that they've made in trying to restrict the late notice to the 2000‑2002 period is that they've admitted that they got notice not only of Mr. Rithmel's claim, but of our involvement in it. Because if they were denying that what they got in March of 2002 put them on notice of our involvement, their late notice argument should have been, we did not know about your involvement in this until your new lawyers sent us a letter putting us on notice in 2006. They did not make that argument before the trial court and they're not making that argument before you. They are conceding that they got notice in 2002 of this claim and of our involvement. And that's very important under the ‑‑ The argument, as I understand it, is that they're saying, although they got notice, they didn't get it from you and they felt that the notice should have come from you. Right. From your client. Well, I know that that's what they think. But there are cases that talk about what happens when an insurance company has actual notice of a claim. And that's the whole Cincinnati analysis that we raised before the trial court on several occasions and brought it up as a ‑‑ Why don't you speak to that? And Justice Tice, as I, we like to talk about the law. Sure. So why don't you speak to the issue of actual notice versus, you know, indirect or constructive notice or some other kind of notice. Sure. Because that's basically what this is all about. Sure. Let's do a framework. Sure. I really like legal framework. It's an interesting approach. This was a trial, correct? Correct. Okay. Let's talk about trial. So are we talking about sufficiency of the evidence? What's our standard of review here? Well, because all of the evidence at trial were documents, it's my understanding that you're allowed to look at this de novo because there is no weighing of the credibility of risk witnesses. It's a question of fact. What question are we resolving? Whether there was reasonable notice? Why did it go to trial? Why wasn't there summary judgment? What facts were in dispute? What are we doing here? Well, I agree with you 100%. I think if you ask Ms. Pialas, who tried the case with me, we actually thought that in the way that this case was tried, we put together a whole list of facts that we all agreed on. There were no factual questions that we disputed. We thought the whole thing was a question of law for the court. We both thought that our motions for summary judgment should have been granted, or that the court should have resolved these issues on the summary judgment questions. But she found, at least with respect to late notice, that there was some sort of factual question. But it gave it the idea of reasonableness. Isn't that what we're talking about? Was notice reasonable? Is that what we're talking about? No. I agree with you. I think it's a pure question of law. No, no, no, no. You're not agreeing. I'm just saying, please explain to me what we're doing here. Okay. This looks like a trial. It was a trial. So that suggests that there was some fact-finding that took place that would change the standard of review. Let's say we talked that way. Right. So what was the issue at trial? And it seems to me the cases, and that's why I kind of now want to bring it back to where Justice Kennedy was. The cases talk about reasonable notice, right? What does notice mean within a reasonable time? Right? Reasonableness sounds like factors that a trial court is going to kind of weigh and balance. Is that what we're doing here? Looking at what's reasonable or not? Well, with respect to the late notice argument, but I think our position is that there was no late notice here because we didn't know what to do, and then they got actual notice. So ideas like sometimes that we look at in terms of reasonable notice, ideas about prejudice. Okay. You don't think we need to look at that? Well, I mean, to the extent that you buy into their argument that somehow the letter from Fremont gives us some sort of notice that should have made us put them on notice at that time, even though I think there was nothing in that letter to indicate that there was a connection between Mr. Rithamel's injury and Allwright's involvement, then you would get into a discussion about whether there's a potential for prejudice or not. So we have to write an opinion from this swirling thing going on here, this vast movement, okay? So when you read cases, you'll notice usually there's a paragraph that says, the issue in this case is. And I'm really struggling to figure out how we write that sentence, okay? So you're saying this is not about the trial, this is not about facts, this is not about reasonableness, this is not about prejudice, none of those ideas apply. I think you're trying to get us to say, to the point that fill in that question, this paragraph, the issue in this case is whether or not American country received actual notice in 2002. Is that right? Is that what you're trying to get? No, because I don't think you have to decide that issue. They've conceded that. Okay. What is the issue in the case? The issue that was framed by the trial judge. No, I'm asking you today. We've got to write something here. What is it? So the trial judge said there's a trial, which sounds to me like there's a trial, like there are facts here. But you're telling me there are no facts. What do you think the issue is in this case? Let's say on the notice piece. What is the issue? How do we formulate that? Well, I don't think there is an issue. I think the trial court got it all right. Okay. But with respect to late notice, the question would be whether the facts presented to the trial court indicated that we had knowledge that Mr. Rithamel's injury arose in such a way that Allwright was involved and we knew this sometime between 2000 and 2002. The facts do not support that because there was nothing that we knew based on the Fremont letter that tied Mr. Rithamel's injury to Allwright in any way. If you want to go the next step and if there's some sort of argument that we should have investigated this or whatever, then you would get into a discussion of whether it was reasonable to wait until the lawsuit was actually filed or whether there was any prejudice suffered by American country anytime between 2000 and 2002. But I don't think that we have to go there because based on the facts we know that there was no prejudice suffered by American country on notice between 2000 and 2002. And then in 2002, American country got actual notice of the claim. So as far as you're concerned, your main issue is your cross appeal. You believe that the real issue in the case as far as you're concerned is that there was no material issue of fact and the trial court should have granted your summary judgment and be done with it. As I understand it, that's the main thrust of what you're saying. There was really no dispute as to the factual facts and circumstances of this case and your motion for summary judgment should be granted so your cross appeal is like the thrust of why you're here. Correct. We have always viewed this as being a Cincinnati case about what does the law require an insurance company to do when it has actual notice of a claim involving one of its insurers. If it's not. So you are basically talking about actual notice, you know, we're back to that again. Right. Like we're going round and round in circles here. You are actually saying that actual notice was given and as far as you're concerned, there is no, there's just, there's no case because your summary judgment should have been granted, there was actual notice, all this other stuff is just fluff and we should, the trial court should have granted your motion for summary judgment and she didn't so here you are. But you actually won anyway on another ground so why, you know. Well, I'm the appellee. I mean, they appealed. I have to show up. But you're still making the argument and what I'm trying to, you probably have said that in one paragraph in your brief, you know, we really believe the trial court made a mistake and that was it. So I'm in the same place with Justice Tice. I'm still trying to find out other than what I just said with respect to your summary judgment question, what do you think the issue is in this case? Well, I'm the appellee. They raised three issues other than. So you don't think that there are any issues with, as far as you're concerned, your summary judgment should have been granted. There are no issues and they're just here because they raised, you're here because they raised three issues so you're responding to their three issues. Right. I mean, I don't agree with their three issues. I wrote at length responding to their three issues in my brief but I don't think that they're correct on the law, which is really what this case is about because we're not arguing about the facts. The case was tried on a stack of documents like this that was given to the trial court and then she issued her ruling. But there had been prior motions for summary judgment that had been denied. What was the factual, what was the material issue of fact that the trial court found thereby requiring that she deny your motion for summary judgment, in your opinion? Well, she actually denied my summary judgment motion, I believe, on a legal decision because what she found, I think she essentially agreed with me that the she said at the very end and we quoted in our brief that I think estoppel is a severe sanction and I don't think it's warranted in this particular situation. So she's not, she didn't disagree with what the facts were. She decided that on this, in this factual context that under the Cincinnati decision that estoppel should not be, should not be used. And our argument was when an insurance company has actual knowledge of a claim, which is undisputed in this case, that in The trial court agreed with you. She said that it's indisputable that ACIC first received notice of the erythemal occurrence and erythemal lawsuit in March 2002, albeit from its named insured all right. It's irrelevant that this notice did not come from Kenneth James and Oak Grove when she cites some case law, which basically there's a long line of cases that talks about, you know, an insurance company having actual notice being the important thing. Right. I think she should have granted my motion for summary judgment because there was no dispute of fact. She got the law right up to that point and then she said, oops, I don't think that estoppel applies here. Well, let me ask you the same question that I asked your opponent and his answer, you heard his answer. The trial court pointed out that the additional insured endorsement does not purport to place an obligation on the additional insured to separately give notice to ACIC. Do you agree with that? Yes. I have the actual language of the policy here. Well, not the policy. Right. Your opponent said something else. Right. No, I mean, it clearly says that you must place us on notice. And Allwright did place them on notice. There's no additional requirement that they be placed on notice again. Kenneth James or Oak Grove or any other additional insured must also give notice. There's nothing else in the policy. It doesn't say that. It doesn't say that. And also, again, I think it was unnecessary in this case because our argument all along has been that when they got the notice from Allwright, they also knew that the lawsuit implicated us and they knew that we were additional insureds under their policy. That's true, but that's the nuance. If it had said that and then you hadn't done it, then they would have a much stronger argument. So I'm just trying to – I'm asking you the same question I asked your opponent. He gave me a different answer. But I read the policy and I didn't see that in there. I don't see it in there either. Okay. Can I ask another difficult question on a third issue? Sure. John Burns, John F. Burns and Target Tender. That's where my question is going. Okay. The Supreme Court has said that the insured has the right to choose which insurance company to represent that. They can say, I know I have multiple coverages, but I'm choosing this over that. Therefore, the others, even though they potentially could have become within this, are going to be excluded and 100% will be on one of the – the burden will be on one of the insurance companies, right? Correct. Now, I have a couple of questions. Obviously, that's implicated in this case. In that, although nobody calls it John F. Burns, but implicates this because first, the Zurich took on the defense. Zurich company took on the defense. And then One Beacon took on the defense. And how long did One Beacon have the defense, fund the defense? Well, One Beacon has been doing it up to the present. And I think they got notice from Zurich in 2003. So from 2003 to the present, One Beacon has been defending Kenneth James and Oak Grove. Then there was a tender to ACIC, correct? A direct tender for the first time, yes. So when was that made? 2006. Are you aware of any cases since John Burns, and I don't remember what your John Burns was, that has discussed this idea of any time limitation? I mean, it's true that the cases seem to say that an insured can say, I'm going to deselect this insurance company and select this group. We now have like a six-year period where suddenly, after six years, the insured changes its mind and wants to go a different direction. Are there any other cases like this out there? I'm not aware of a case that specifically deals with that question. But as I read that line of cases, there would be nothing that would prohibit that from happening, and I could certainly see a situation where an insured is very happy to be defended by not its own company, but like the subcontractor's company for a long period of time. And then when they get on the eve of trial and realize that the limits of that policy are not going to be enough to satisfy a possible judgment, that they suddenly decide to reactivate one or more other policies that they would have access to. I mean, you really only need one insurance company to defend you. What you have to be concerned about in a John Burns situation is what limits do you have available when you finally go to trial and get hit for a huge judgment. And so I could definitely see a situation, I'm not aware of a case, but I could definitely see a situation where you could go for a long period of time having targeted one particular insurance company and letting them defend you, and then suddenly bringing other insurers in. Then like the day, as you say, as you get to trial, and suddenly a third insurance company that has had nothing to do with the defense is suddenly brought in. Yeah. Does that seem fair to you? I think it's very fair because we could have targeted them and made them prefer that because they have a whole section of their brief about wanting to control the litigation, as most insurance companies want to do. So maybe they would have liked that better. Well, unfortunately, in this case, they would not have been able to do that, as we point out, because of the inherent conflict between their named insured and the additional insured. You know, it could not have been done. So, I mean, if anything, they should be grateful that one beacon was paying all these defense costs when theoretically they could have been paying 100% of our defense costs and 100% of all rights defense costs from day one. And we've never asked for that relief in this case. We never took the position that we made a targeted tender to them back in 2002, that we targeted tendered them in 2006, or even did a targeted tender to them when the loss, the rhythmal suit that was dismissed was refiled. We just want them to pay their fair share of the defense costs. And if we get to that point. So this is a contribution idea? Right. We didn't, we never, there's no evidence that a targeted tender was ever made in this case. So we don't want them to pay 100%. No way in your brief do you mention that concept. Well, we certainly. There are paragraphs in these briefs that after like eight pages, on the bottom one paragraph would be an entirely new idea. See, we really take our jobs serious. We want to answer the questions you've asked us. I've asked you what the issue in this case is. I'm giving you a softball. This is your chance to shape this case. And you said, I don't know, there aren't any issues. Why are we here? I mean, everybody's just throwing new ideas at us. And we're just going to have to make some sense of what you've been dumping on us. I'm sorry. But that's how this is. You can't keep throwing out new ideas and taking the cases in lots of different directions. We're trying to answer these questions. I don't see anything here about contribution. Well, it came up in the context of, they made this argument with respect to their waiver position, that they assume that certain targeted tenders were made and, therefore, they're not on the hook. And we responded to that by saying that no targeted tenders were made. There's no evidence that they were made. And I guess to the extent that if you're asking what this case is about, we want them to pay their fair share of the defense costs that we've incurred in this case, the defense costs going forward because the underlying case is still going on, and if the facts ultimately determined at trial would indicate that they have a duty to indemnify us and we get a judgment entered against us, we want them to pay their fair share of that. That's a clearly stated paragraph, and I wish you had put that in your brief because it's not in here. To the extent, I am telling you, I read these briefs. I spent more time with these briefs in the record than I could.